UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARQUITA WILSON, o/b/o D.X.W. (a minor)

      Plaintiff,

v.                                            Case No: 2:17-cv-487-FtM-CM

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff Marquita Wilson, on behalf of D.X.W., a minor, seeks judicial review of the denial of her child's claim for supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").[1] The Court has reviewed the record, the Joint Memorandum (Doc. 19) and the applicable law. For the reasons discussed herein, the decision of the Commissioner will be reversed.

I.    Issues on Appeal[2]

Plaintiff raises two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly weighed and evaluated the opinion evidence of record, including the opinions of pediatrician Laura Steelman, M.D. and psychiatrist J. Bryce

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 13, 14.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

McLaulin, M.D. and teachers Jamie Wiles and Jessica Hochsletter; and (2) whether substantial evidence supported the ALJ's decision to give little weight to Plaintiff's testimony.

## II.    Summary of the ALJ's Decision

On November 4, 2013, Plaintiff filed an application for SSI on behalf of her minor child, D.X.W., born on November 8, 2006, alleging disability that began on November 1, 2013, due to asthma, allergies, and Attention Deficit Hyperactivity Disorder ("ADHD"). Tr. 77, 86, 169-78. The Commissioner denied the claim initially on February 20, 2014, and upon reconsideration on April 24, 2014. Tr. 100, 107. On May 19, 2014, Plaintiff requested a hearing before an ALJ, and ALJ T. Whitaker held the hearing on June 14, 2016. Tr. 44, 48-76. Plaintiff and D.X.W. testified at the hearing. Tr. 48-76. On August 24, 2016, the ALJ issued a decision finding D.X.W. was not disabled and denying his claim. Tr. 10-23.

At step one, the ALJ found D.X.W. had not engaged in substantial gainful activity since November 4, 2013, the application date. Tr. 13. Next, at step two, the ALJ found D.X.W. had the following severe impairments: asthma; asthmatic bronchitis; reactive airway disorder; allergic rhinitis; allergic dermatitis; atopic dermatitis; allergies; edema; ADHD; Borderline Intellectual Functioning ("BIF"); history of depression in remission; adjustment disorder with mixed disturbance of emotion and conduct; conduct and emotional disorder mixed; emotional or behavioral disorder; and Oppositional Defiance Disorder ("ODD"). *Id.* The ALJ found D.X.W. had non-severe impairments of emesis; rhino sinusitis; sinusitis; conjunctivitis; sore

throat and cold; right earache; otitis media; peanut allergy; macules and papules; and molluscum contagiosum.  *Id.*

At step three, the ALJ found D.X.W. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  *Id.*  The ALJ then determined that D.X.W. did not have an impairment or combination of impairments that resulted in either "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning, as required to functionally meet a listing.  Tr. 16-23; 20 C.F.R. § 416.926a(a).  Thus, the ALJ found D.X.W. was not disabled from November 4, 2013 to August 24, 2016, the date of the decision.  Tr. 23.  The Appeals Council denied Plaintiff's request for review on June 28, 2017, and Plaintiff subsequently filed a Complaint with this Court.  Tr. 1-3; Doc. 1.  The ALJ's August 24, 2016 decision is the final decision of the Commissioner, and the matter is now ripe for review.

### III.  Standard of Review

An individual under the age of eighteen is disabled for purposes of seeking child SSI benefits when he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential analysis for evaluating a claim of disability for a child, which requires the child claimant to show that: (1) he is not engaging in substantial gainful activity;

(2) he has an impairment or combination of impairments that is severe; and (3) his impairment or combination of impairments meets, medically equals or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

If the Commissioner determines at step three the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the analysis ends there. If not, the Commissioner decides whether the child's alleged impairment results in limitations that functionally equals a listing. 20 C.F.R. § 416.926a(a). In determining whether an impairment or combination of impairments functionally equals a listing, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal a listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's impairment(s) interferes "very seriously" with his ability to independently initiate, sustain or complete activities. 20 C.F.R. §416.926a(e)(3). The Commissioner evaluates each domain of functioning based on the child's age group.

*See* 20 C.F.R. § 416.926a(g)(2). The age groups include the following: newborns and young infants; older infants and toddlers; preschool children; school-age children; and adolescents. *Id.*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[3] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580,

---

[3] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 416.920a, 416.920c, 416.926a 416.927 (effective March 27, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Summary of Relevant Evidence and Testimony[4]

D.X.W. was born on November 8, 2006. Tr. 13. Thus, D.X.W. was nine years old and a "school-age child" under the regulations on the date of the ALJ's decision, and a preschooler on the date Plaintiff filed D.X.W.'s SSI application. Tr. 13; 20 C.F.R. § 416.926a(g)(2). On November 19, 2013, D.X.W.'s first grade teacher, Jamie Wiles, completed a questionnaire evaluating D.X.W.'s functioning. Tr. 221-32. At the time, Ms. Wiles had known D.X.W. for about two months. Tr. 223. Ms. Wiles indicated D.X.W. had various problems functioning in the following domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. Tr. 224-28.

On January 6, 2014, Dr. Laura Steelman, D.X.W.'s pediatrician, evaluated D.X.W. for ADHD and other issues including asthma. *See* Tr. 400-415. On March 28, 2014, psychiatrist J. Bryce McLaulin. M.D. performed a psychiatric evaluation of D.X.W. and noted he had poor concentration and poor task completion skills, low

---

[4] A complete summary of the undisputed record evidence and testimony is found in the parties' Joint Memorandum of Law. Doc. 19 at 5-15.

interest levels, and high energy levels. Tr. 388. He noted D.X.W. had been in trouble at school, and his IQ was 76. *Id.* Dr. McLaulin opined D.X.W. had ADHD and ODD and prescribed medication to treat the ADHD. Tr. 392.

On July 3, 2014, Dr. Steelman completed a childhood disability evaluation form regarding D.X.W.'s functioning. Tr. 458-59. Dr. Steelman opined D.X.W. had "marked" limitations attending and completing tasks and interacting and relating with others, and "less than marked" limitation caring for himself. *Id.* Dr. Steelman also commented D.X.W. had a history of asthma and had recently been diagnosed with ADHD and Emotional and Conduct Disorder. Tr. 465. Dr. Steelman further commented D.X.W. had been prescribed Concerta and Adderall medications "with mixed success" for the ADHD and Zoloft for the emotional disorder. *Id.* On August 29, 2014, Dr. McLaulin completed an ADHD questionnaire assessing D.X.W.'s limitations. Tr. 462-63. Dr. McLaulin opined D.X.W. had ADHD with marked inattention, impulsiveness and hyperactivity; cognitive and social functioning at a level typical of children half his age; and marked impairments in cognitive and social functioning, personal functioning, and maintaining concentration, persistence or pace. *Id.*

At the hearing on June 14, 2016, D.X.W. and Plaintiff testified. *See* Tr. 48-76. D.X.W. testified he takes one medication that makes him feel sleepy; he can complete chores at home, dress himself and make sandwiches; he had gotten in trouble at school two times in the most recent school year; and he did his homework every day. Tr. 52-64. Plaintiff testified D.X.W. takes albuterol for his asthma and

- 7 -

Focalin for his ADHD; he only took the medication on school days; he had difficulty completing his homework; he had crying spells about every day; he completed his chores regularly; and he had never been suspended from school. Tr. 66-74.

On April 8, 2016, Jessica Hochsletter, D.X.W.'s third grade teacher at Tanglewood Elementary School, completed a Teacher Assessment questionnaire.[5] Tr. 297-301. For the reasons stated below, the case must be remanded based on the ALJ's inadequate consideration of Ms. Hochsletter's questionnaire. The questionnaire Ms. Hochsletter completed indicated it should be completed by the person most familiar with D.X.W.'s overall functioning. Tr. 297. At the time Ms. Hochsletter completed the form, she was D.X.W.'s third grade teacher and had known him for approximately six months, seeing him six and a half hours per day every weekday. Tr. 297, 301. The questionnaire asked Ms. Hochsletter to evaluate D.X.W.'s functioning in various areas and assign one of the following ratings to each area: No problem, slight problem, obvious problem, serious problem, or very serious problem. Tr. 297-301. For certain domains the questionnaire also asked Ms. Hochsletter to note how frequently D.X.W. experiences the problem: Monthly, weekly, daily, or hourly. Tr. 298-300.

In the domain of acquiring and using information, Ms. Hochsletter indicated D.X.W. had obvious problems providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, and applying

---

[5] The form appears to have been created by the law firm Myler Disability, but it is nearly identical to the teacher assessment form used by the Social Security Administration, form SSA-5665-BK (Teacher Questionnaire). Tr. 297-301; *see also* Tr. 220-32.

problem-solving skills in class discussion; and slight problems comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussion, and recalling and applying previously learned material. Tr. 297. She further explained:

> [D.X.W.] will try to complete most activities independently and will ask for help. He is a very smart boy but when he is unable to solve a problem he [] does get upset and emotional.

*Id.* For the second domain, attending and completing tasks, Ms. Hochsletter indicated D.X.W. had serious problems carrying out multi-step instructions (hourly) and waiting to take turns (hourly); obvious problems paying attention when spoken to directly (daily), sustaining attention during activities (daily), and organizing his own things or school materials (daily); and slight problems focusing long enough to finish assigned tasks (daily), refocusing to task when necessary (daily), and completing work accurately without careless mistakes (daily). Tr. 298. She explained:

> [D.X.W.] does a great job completing his work but gets upset when asked to fix incorrect answers. He struggles with taking turns and gets upset if he does not get to be first. Multi-step[] problems are also very difficult for him to understand and implement through the day.

*Id.* For the third domain, interacting and relating with others, Ms. Hochsletter rated D.X.W. as having serious problems expressing anger appropriately (daily), following rules (daily), using language appropriate to the situation and listener (daily), and interpreting the meaning of facial expression, body language and sarcasm; obvious problems playing cooperatively with other children (daily), seeking attention

appropriately (daily), asking permission appropriately (no frequency checked), respecting/obeying adults in authority (weekly), and taking turns in conversation (daily); and slight problems making and keeping friends (weekly) and introducing and maintaining relevant and appropriate topics of conversation (weekly). Tr. 299. She further noted:

> [D.X.W.] will mumble words when he is upset/angry[,] when in trouble or mad at someone. He will also cry and put his fingers in his mouth when upset. It takes between 5-10 min[utes] for him to calm down.

*Id.*

Ms. Hochsletter indicated D.X.W. had no problem in the domain of moving about and manipulating objects. Tr. 300. For the fifth domain, caring for himself, Ms. Hochsletter indicated that D.X.W. had very serious problems with identifying and appropriately asserting emotional needs (hourly), responding appropriately to changes in his own mood (hourly), and using appropriate coping skills to meet daily demands of school environment (hourly); obvious problems with handling frustration appropriately (hourly), being patient when necessary (hourly), and taking care of personal hygiene (hourly); and slight problems using good judgment regarding personal safety and dangerous circumstances (weekly). *Id.* She explained further:

> [D.X.W.] is a very emotional young man and gets upset easily. He does have a difficult [sic] responding appropriately in different situations. [D.X.W.] will either cry or get very mad and name call.

*Id.* Finally, in the sixth domain, medical conditions, Ms. Hochsletter noted that D.X.W.'s conditions of asthma, depression and shortness of breath interfere with his functioning at school but are controlled with medications. Tr. 301.

The ALJ briefly discussed Ms. Hochsletter's questionnaire in her opinion:

> The undersigned gives the 3rd grade teacher questionnaire less weight because it was before the application and the claimant [sic] only had 6 months of interaction with the claimant. The evidence shows improvement later[.]

Tr. 16 (citation omitted). Earlier in the opinion, the ALJ cited Ms. Hochsletter's questionnaire when discussing D.X.W.'s school records generally, stating:

> School Records show the claimant has been evaluated due to academic, behavioral and language concerns[.] The claimant is receiving special education services. The claimant is currently reading on grade level. The claimant is able to solve math problems independently. The claimant enjoys coming to school and learning. He enjoys playing on the computer with his friends and loves telling stories. The claimant obtains good grades while following the regular school curriculum. The claimant's teacher indicated the claimant has problems with acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. He has no problems moving about and manipulating objects. The claimant's teachers also indicated the claimant will try to complete most activities independently and will ask for help when needed. He is a very smart boy but when he is unable to solve a problem, he gets upset and emotional. He does a great job completing his work but gets upset when asked to fix an incorrect answer. He struggles with taking turns and multi-step problems are also difficult for him. The claimant will mumble words when [he] is upset or angry. It takes between 5-10 minutes for him to calm down.

Tr. 15-16 (internal citation omitted).

### V. Discussion

Plaintiff argues that the ALJ failed to sufficiently consider Ms. Hochsletter's questionnaire. Doc. 19 at 21-22. Plaintiff argues the ALJ should have given Ms. Hochsletter's opinion greater weight because, as D.X.W.'s third grade teacher, she had the opportunity to observe D.X.W. "for the entire school day, every week day, for six months, which is far greater contact with [D.X.W.] than any other source in the

record had, with the exception of [D.X.W.'s] mother." *Id.* at 22. Plaintiff also claims the ALJ's assertion that Ms. Hochsletter completed her questionnaire prior to D.X.W.'s application date is incorrect, and notes that Plaintiff filed D.X.W.'s application in November 2013, and Ms. Hochsletter completed her questionnaire in 2016. *Id.* Plaintiff also claims the ALJ's analysis under the six domains "are simply broad, unsupported assertions and mischaracterizations with little citation to the record" and that the ALJ focused on what D.X.W.'s "doctors and teachers noted he can do rather than the serious deficits they described." *Id.*

The Commissioner responds that substantial evidence supported the ALJ's decision to give Ms. Hochsletter's questionnaire less weight "because it was before [D.X.W.'s] SSI application date, the teacher had only had six months of interaction with [D.X.W.] at the time, and later evidence showed improvement[.]" *Id.* at 29 (citation omitted). The Commissioner acknowledges, however, that "the ALJ mistakenly stated the questionnaire was from before [D.X.W.'s] SSI application date[.]" *Id.* (citation omitted). The Commissioner argues the ALJ's "misstatement is harmless," however, "as the ALJ did not rely only on this factor in assessing the third grade teacher's statements, and substantial evidence otherwise supports the ALJ's decision[.]" *Id.* (citation omitted). Thus, the Commissioner argues the ALJ's misstatement does not warrant remand. *Id.*

"The regulations require the ALJ to evaluate every opinion of record and to explain the weight assigned to opinions from an 'acceptable medical source." *McGruder v. Astrue*, No. 1:11-cv-0468-JSA, 2012 WL 5817938, at *6 (N.D. Ga. Nov.

- 12 -

16, 2012) (citing 20 C.F.R. §§ 404.1513(d), 416.927(b), (d)). While the Court recognizes that Ms. Hochsletter is not an "acceptable medical source," SSR 06-03p requires that the ALJ consider evidence from non-medical sources such as teachers, school counselors and social workers. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "Although the Eleventh Circuit has held that the ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart*, 395 F.3d. 1206, 1211 (11th Cir. 2005), the ALJ must explain the weight afforded to 'obviously probative exhibits.'" *McGruder*, 2012 WL 5817938, at *7 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Further, "SSR 06-03p further clarifies that this requirement that an ALJ state the weight given to 'obviously probative exhibits' should generally apply to evidence from nonmedical sources such as teachers." *Id.* Information from sources such as teachers "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2.

In *McGruder*, the plaintiff, on behalf of the minor claimant, argued that the ALJ erred when he failed to apply the proper legal standards when evaluating the claimant's teacher questionnaires. 2012 WL 5817938, at *6-8. The court agreed and reversed and remanded the decision back to the Commissioner. *Id.* at *6-11. The court noted that although the ALJ is not required to apply to "other sources" the six factors used for evaluating medical opinions from "acceptable medical sources," the factors represent principles that can apply to the consideration of all opinions, including school records. *Id.* at *7 (citing 20 C.F.R. §§ 404.1527(d); 416.927(d)).

These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence in support of an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. *Id.* (citing SSR 06-03p, 2006 WL 2329939).

The court in *McGruder* found that the ALJ's opinion was not sufficiently detailed for the court to determine whether the ALJ evaluated the teacher questionnaires in accordance with the factors set forth in SSR 06-03p. *Id.* at *6. The ALJ did not discuss the serious limitations reported by the teachers and the extensive contacts the claimant had with the teacher over the years. *Id.* at *8. The court found that remand was required because "the ALJ's minimal discussion of the teacher questionnaires did not sufficiently explain the weight he placed on those important pieces of evidence, how he considered them, and how they fit into his ultimate determination." *Id.* The court found that the ALJ summarily addressed the questionnaires by noting that they reveal "some limitation." *Id.* Thus, the court found that it was impossible to determine whether the ALJ's decision was support by substantial evidence and remanded the case back to the Commissioner. *Id.* at 11.

Here, Ms. Hochsletter's responses on her questionnaire indicated that D.X.W. had significant challenges functioning in school. Tr. 297-301. She noted that D.X.W. had obvious problems acquiring and using information; serious problems attending and completing tasks; serious problems interacting and relating with

others; and very serious problems caring for himself. Tr 297-300. She also included written notes in each domain in addition to the requested responses. Tr. 297-301. D.X.W.'s first grade teacher, Ms. Wiles, also completed a teacher questionnaire and noted similar difficulties. Tr. 221-32. Ms. Hochsletter's responses were consistent with much of the medical evidence of record, including Dr. Steelman's opinion that D.X.W. had "marked" limitations in the domains of attending and completing tasks and Dr. McLaulin's opinion that D.X.W. had ADHD; "marked" inattention, impulsiveness, and hyperactivity; a level of cognitive and social functioning typical of a child half his age; and "marked" impairments in age-appropriate social, cognitive and personal functioning as well as maintaining concentration. Tr. 458, 462-63. Ms. Hochsletter saw D.X.W. almost seven hours per day every weekday for about six months, and her questionnaire was submitted only about two months prior to D.X.W.'s hearing before the ALJ. Tr. 297-301; *see* Tr. 48.

The ALJ devoted very little discussion to Ms. Hochsletter's questionnaire responses in the opinion. *See* Tr. 10-23. The ALJ discussed D.X.W.'s "school records" generally and cited the exhibit number for Ms. Hochsletter's questionnaire (along with numerous other exhibits) when making her findings regarding the six domains, but it is unclear when she is referencing Ms. Hochsletter's questionnaire or Ms. Wiles' questionnaire, or other evidence in the record, when discussing specific facts. Tr. 15-22. The distinction between Ms. Hochsletter's and Ms. Wiles' questionnaires is significant because Ms. Hochsletter knew D.X.W. for six months while Ms. Wiles knew him for only two months, and Ms. Hochsletter submitted her

questionnaire two months prior to the hearing in April 2016 while Ms. Wiles submitted hers in November 2013. Tr. 221-32, 297-301. Also, at the time Ms. Hochsletter submitted her questionnaire D.W.X. was on medication for his ADHD, contrary to when Ms. Wiles submitted her questionnaire. *See* Doc. 19 at 9; Tr. 92, 465.

The ALJ explained that she gave Ms. Hochsletter's questionnaire "less weight" because she submitted it before D.X.W.'s application date, she only knew D.X.W. for six months, and "[t]he evidence shows improvement later." Tr. 16. The ALJ gave no explanation why six months of observing D.X.W. every day was inadequate, however, and did not explain her assertion that Ms. Hochsletter's questionnaire is inconsistent with other evidence. *See id.* Further, the ALJ erroneously stated that Ms. Hochsletter submitted her questionnaire prior to D.X.W.'s application date of November 4, 2013, when she submitted it over two years later, on April 8, 2016. Tr. 86, 297-301. Contrary to the Commissioner's assertion, this error is not harmless. *See* Doc. 19 at 29; *cf. Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's factual error was harmless only because it was irrelevant to the ALJ's legal determination). The ALJ cited to Ms. Hochsletter's questionnaire when making her findings regarding the six domains but made no mention of her significant concerns about D.X.W. in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and he failed to analyze or explain why she accepted certain positive observations of D.X.W. while discounting negative observations. Tr. 17-21.

The ALJ failed to adequately address the factors in SSR 06-03p and failed to sufficiently consider Ms. Hochsletter's questionnaire and explain the weight given to the questionnaire.  *See McGruder*, 2012 WL 5817938, at *7; SSR 06-03p, 2006 WL 2329939; *see also Whaley v. Comm'r of Soc. Sec.*, No. 2:17-cv-324-FtM-99CM, 2018 WL 3949964 (M.D. Fla. Aug. 1, 2018); *Thompson v. Comm'r of Soc. Sec.*, No. 2:14-cv-328-FtM-CM, 2015 WL 5599165 (M.D. Fla. Sept. 22, 2015).  Accordingly, the Court cannot determine whether the ALJ's decision is supported by substantial evidence.  Thus, the case must be reversed and remanded back to the Commissioner to apply the appropriate legal standards and re-weigh all the evidence, including the opinion evidence of D.X.W.'s teachers and physicians.  Because the case must be remanded for further consideration of Ms. Hochsletter's questionnaire, the Court will direct the ALJ to re-evaluate the other issues raised by Plaintiff.

ACCORDINGLY, it is

**ORDERED:**

1. The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for the Commissioner to:

>   a. Review and consider the opinion evidence, including the opinions of Ms. Hochsletter, Ms. Wiles, Dr. Steelman and Dr. McLaulin;
>
>   b. Re-evaluate Plaintiff's testimony; and
>
>   c. Make any other determinations consistent with this Opinion and Order, or in the interests of justice.

2. The Clerk of Court is directed to enter judgment in favor of Plaintiff, Marquita Wilson, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record